IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| PRITI SHUKLA, individually and on behalf of all others similarly situated, | : : CIVIL ACTION FILE NO. |
| *Plaintiff,* | : : |
| v. | : **COMPLAINT – CLASS ACTION** : |
| BOTTOM LINE CONCEPTS LLC, | : : **JURY TRIAL DEMANDED** |
| *Defendant.* | : : : : |

Plaintiff PRITI SHUKLA (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief, as follows:

## NATURE OF ACTION

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls— 3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991,

known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      However, the TCPA doesn't only restrict robocalls.

3.      Indeed, the TCPA also prohibits making calls to numbers on the Do Not Call Registry because telemarketing calls are intrusive.

4.      "A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

5.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations,

he can add her number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. Id…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect her own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

6. This case involves a campaign by Bottom Line Concepts LLC ("Bottom Line") to market its services through the use of pre-recorded telemarketing calls in violation of the TCPA.

7. Ms. Shukla also alleges that Bottom Line used automated systems to make telemarketing calls into Florida, and that by doing so, the Defendant has violated the provisions of the Florida Telephone Solicitations Act, Fla. Sta § 501.059.

8. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

9. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and FTSA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

10. Plaintiff Priti Shukla is an individual located in Hillsborough County in the Middle District of Florida.

11. Defendant Bottom Line Concepts LLC is a Miami company that makes telemarketing calls into this District.

## JURISDICTION AND VENUE

12. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court has supplemental jurisdiction over the state law claims since they relate to the same telemarketing campaign.

13. This Court has personal jurisdiction over Bottom Line because it is headquartered and has its principal place of business in Florida and because it made the telemarketing calls at issue into this District.

14. Venue is proper pursuant to 28 U.S.C. § 1391(2) because the telephone calls at issue were sent into District.

## TCPA BACKGROUND

Calls Made Using a Pre-Recorded Message

15. The TCPA regulates, among other things, the use of a pre-recorded message to make calls or send pre-recorded calls. *See* 47 U.S.C. § 227, *et seq.*; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16. Specifically, the TCPA prohibits the use of a pre-recorded message to a wireless number in the absence of an emergency or the prior express written consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (F.C.C. 2012).

17. "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

18. "[P]rior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded

voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

The National Do Not Call Registry

19. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

20. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

21. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The Florida Telephone Solicitations Act

22. The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

23. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and

dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

24. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

25. Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

## **FACTUAL ALLEGATIONS**

26. Plaintiff and Defendant are all "persons" as the term is defined by 47 U.S.C. § 153(39).

27. At no point has the Plaintiff consented to receive telemarketing calls regarding Defendant's goods or services prior to receiving the pre-recorded calls at issue.

28. Ms. Shukla's cellular telephone number is (813) XXX-XXXX.

29. That cellular telephone number is a residential telephone line used by Ms. Shukla for personal calls, such as for communicating with friends, family, relatives, acquaintances, and conducting personal residential chores and tasks.

30. The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

31. That telephone number is not associated with a business.

32. Ms. Shukla's number was on the National Do Not Call Registry since 2006, well before the calls at issue.

33. Despite that, Ms. Shukla received at least 18 calls or text messages from or on behalf of Bottom Line between May 23, 2023 and August 19, 2023, from numerous caller IDs. Of those 18 calls, at least 5 of them were transmitted with prerecorded or artificial voices.

34. Under the TCPA, a text message is treated as a call. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

35. The first such call occurred on May 23, 2023 at 5:38 pm from the caller ID 863-249-0224. As soon as the Plaintiff answered, an artificially-generated female robotic voice stated that she was "Faith" with "ERC Concepts," a fake name used by the Defendant at the outset of the calls to avoid ill will for its brand.

36. The robotic voice pitched employee retention credit tax preparation services, a service which is offered by Defendant.

37. After asking a few questions, the Plaintiff was eventually transferred to a human being, an unnamed gentleman who stated that he was with Bottom Line Concepts, also known as Bottom Line Savings, and provided a website and email address. During this call, the Plaintiff also googled the Defendant's contact information, whereby she was able to confirm the caller's identity as the Defendant.

38. Thereafter, on May 24, 2023 at 10:17 am, the Plaintiff received another call, this time from the caller ID 863-249-0283, which was missed. As soon as the Plaintiff called the number back, the same artificially-generated generated robotic female voice stated that she was "Faith" with "ERC Concepts," trying to sell her employee retention credit services, and again transferred the call to a human representative that hung up when the Plaintiff asked for what the real name of his company was.

39. Thereafter, that same day, at 12:01 pm, the Plaintiff received yet another call, this time from the caller ID 863-249-0227. When the Plaintiff answered, the same artificially-generated generated robotic female voice, "Faith," stated that the previous call got disconnected and asked to wait to transfer the call to a human. The Plaintiff was then transferred to a human, who attempted to sell her

9

the same employee retention credit services. When asked as to what the name of his company was, the agent stated "sorry to bother you" and hung up.

40. Thereafter, and again that same day, at 12:54 pm, the Plaintiff received yet another call, this time from the caller ID 863-249-0243. When the Plaintiff answered, the same artificially-generated generated robotic female voice, "Faith," stated that the previous call got disconnected and asked to wait to transfer the call to a human. The Plaintiff was then transferred to a human, "Ralph," who attempted to sell her the same employee retention credit services. When asked who Defendant was incessantly looking for, "Ralph" hung up.

41. On June 28, 2023, at 17:48 pm, the Plaintiff received a voicemail from the Caller ID 216-434-4884. This voicemail was made in an artificially-generated generated robotic female voice, "Kim," stated that she was calling about employee retention credit services, and instructed the Plaintiff to call back the number 218-318-5208. When Plaintiff called the number back, she was instructed to leave a message and could not because the voicemail box was full.

42. The Plaintiff also received multiple text messages which she confirmed to have come from Defendant Bottom Line Concepts, as reproduced below:



43.     The Plaintiff also received multiple calls from employees of Defendant, including from Louis and his co-workers, including from the caller IDs and 316-202-2316, 316-706-3074, on July 27 and 28 further seeking to solicit the Plaintiff for employee retention credit programs offered by the Defendant.

44.     The aforementioned robotic calls were clearly made with artificial and pre-recorded voices because (a) the robot played the same exact message in some instances, (b) the robot had a generic, monotone voice, (c) it would be illogical for a

11

human to call someone and play various scripted questions, only to then transfer the call to another individual who is obviously human to complete the sale.

45. The Plaintiff never provided her consent or requested the calls or text messages.

46. The calls and text messages were all unwanted, nonconsensual encounters.

47. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. Plaintiff and the Class Members were also harmed by use of their telephone power, storage space, wear and tear, and network bandwidth and the intrusion on their telephone that occupied it from receiving legitimate communications.

## CLASS ACTION ALLEGATIONS

48. Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

49. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **TCPA Robocall Class:** All persons within the United States: (1) to whose cellular telephone number (2) Defendant (or an agent acting on behalf of Defendant) placed a telemarketing call (3) from four years prior to the filing date of this Complaint through trial (4) using an identical or substantially similar pre-recorded or artificial voice message used to place telephone calls to Plaintiff.

**Florida Telephone Solicitation Act Autodial Class:** All persons in the U.S., who, (1) received a telephonic sales call regarding Bottom Line's goods and/or services, (2) using an identical or substantially similar pre-recorded or artificial voice message used to place telephone calls to Plaintiff or the same equipment or type of equipment utilized to call Plaintiff (3) from July 1, 2021 through trial.

**National Do Not Call Registry Class:** All persons in the United States whose, (1) residential telephone numbers were on the National Do Not Call Registry for at least 30 days, (2) but received more than one telephone solicitation call from any Defendant (or an agent acting on behalf of Defendant) (3) within a 12-month period, (4) from four years prior to the filing of the Complaint through trial.

50. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the classes as he has no interests that conflict with any of the class members.

51. Excluded from the Class are counsel, the Defendant, and any entities in which the Defendant have a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

52. Plaintiff and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

53. This Class Action Complaint seeks injunctive relief and money damages.

54. The Class as defined above is identifiable through the Defendant's dialer records, other phone records, and phone number databases.

55. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members for each Class number, at minimum, in the hundreds based on the fact that recorded messages were used to send the calls.

56. The joinder of all Class members is impracticable due to the size of the Classes and relatively modest value of each individual claim.

57. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

58. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

 (a) Whether the Defendant used pre-recorded messages to send telemarketing calls;

 (b) Whether the Defendant called numbers on the National Do Not Call Registry;

 (c) whether Defendant made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

 (d) whether Defendant's conduct constitutes a violation of the TCPA; and

(e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

59. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

60. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so.

61. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

62. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### 47 U.S.C. 227(b) on behalf of Plaintiff and the TCPA Robocall Class

63. Plaintiff incorporates the allegations in paragraphs 1-62 as if fully set forth herein.

64. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class delivering pre-recorded messages.

65. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their residential or cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

66. If the Defendant's conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

67. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C.

§ 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

## SECOND CAUSE OF ACTION
### Violation of the Florida Telephone Solicitation Act, Fla. Stat. § 501.059
### On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial Class

68. Plaintiff repeats and incorporates the allegations set forth in the paragraphs 1-62 as if fully set forth herein.

69. Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendant.

70. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

71. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

72. Defendant failed to secure prior express written consent from Plaintiff and the Class Members.

73. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

74. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers and the playing of a recorded message when a connection is completed.

75. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

**THIRD CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**On behalf of Plaintiff and the National Do Not Call Registry Class**

76. Plaintiff repeats and incorporates the allegations set forth in the paragraphs 1-62 as if fully set forth herein.

77. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227 by making

telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

78. Defendant's violations were negligent, willful, or knowing.

79. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

80. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendant from calling telephone numbers advertising their goods or services, except for emergency purposes, using a pre-record message in the future;

B. That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation; and

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing such Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

D. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: December 3, 2024

PLAINTIFF, individually and on behalf of all others similarly situated,

/s/ Avi R. Kaufman
Avi R. Kaufman (FL Bar no. 84382)*
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative classes*

*Lead Counsel